In the Matter of Proceedings against Suffolk County District Court Judge FLOYD SARISOHN, Respondent.

Second Department, May 15, 1967.

*Harry C. Brenner* (*Arthur Goldstein* of counsel), for respondent.

*Reginald C. Smith* and *Solomon A. Klein,* counsel appointed to conduct and try the proceeding.

*Per Curiam.* Having determined preliminarily from reports transmitted to its Director of Administration of the Courts by the Administrative Judge of Suffolk County that sufficient reason existed therefor, this court ordered an investigation to be made concerning the conduct of respondent. Thereafter this proceeding was instituted pursuant to the applicable provisions of the Constitution and relevant statutes (N. Y. Const., art. VI, § 22, subd. i; UDCA, § 103, subd. [e]; Code Crim. Pro., § 132) to remove respondent, a Judge of the District Court of Suffolk County, from office for cause.

In December, 1954, respondent was admitted to the Bar. Between January 1, 1960 and December 31, 1963 he was a duly elected Justice of the Peace of the Town of Smithtown. Beginning January 1, 1964 he was a duly elected Judge of the District Court of Suffolk County.

The original and supplemental statements contain 18 charges against respondent. By order, dated February 8, 1967, 9 of the 18 charges were struck out and deleted from consideration in this proceeding.

Of the 9 remaining charges, charges 1, 9 and 18 have to do with respondent's conduct while he was a Justice of the Peace and prior to his taking office as a District Court Judge. On November 28, 1966 this court denied respondent's motion

to strike these charges, the motion having been made on the ground that the charges related to acts prior to respondent's taking office as a Judge of the District Court, and were unrelated to respondent's conduct as such Judge (26 A D 2d 388). On December 9, 1966 this court denied leave to appeal to the Court of Appeals from the said order, and on February 21, 1967 the Court of Appeals likewise denied leave to appeal (19 N Y 2d 689).

Charge 1 relates to respondent's relationship with one Carmen Sanabria, also known as Elida Peck and as Lee Matos. On July 18, 1962 Mrs. Sanabria had pleaded guilty before Justice of the Peace KANE, sitting as a Court of Special Sessions in Suffolk County, to having committed prostitution at the Sunshine Valley Motel in Huntington. On October 24, 1962 she was sentenced to a term of three months, with execution of sentence suspended, and she was placed on probation for three years.

Charges 1 is in two parts. In the first part respondent is charged with having solicited legal business about July 23, 1962 in that he urged Mrs. Sanabria to engage his services, stating that he was a Judge in Smithtown, that he knew Judge KANE, and could be of great assistance to her. In the second part respondent is charged with advising Mrs. Sanabria during August and September, 1962 (after she had pleaded guilty to prostitution and while awaiting sentence) to mislead the Probation Department by falsely pretending to have desisted from prostitution and advising where and how she should carry on her activities as a prostitute, without getting caught again; and respondent assured her she would receive a suspended sentence if, in the interim, she followed his instructions.

The evidence against respondent consists of recorded telephone conversations between respondent and Mrs. Sanabria obtained as the result of separate orders made on July 2, 1962, August 31, 1962, and June 4, 1963, pursuant to section 813-a of the Code of Criminal Procedure, authorizing the tapping of Mrs. Sanabria's telephone. The recorded conversations took place on July 23 and 24, August 10 to 13, August 16 to 20, August 29, September 14—all 1962; and June 19 to 21, 1963. At the opening of the hearing respondent moved to vacate the three wiretap orders and to suppress the evidence obtained as a result of the telephonic interception.

Respondent's motion is denied. Evidence obtained by a wiretap order lawfully issued is admissible (*People* v. *Dinan,* 11 N Y 2d 350, cert. den. 371 U. S. 877; *People* v. *Berger,* 18 N Y 2d 638). The evidence established that there was before the Judges who made the three orders sufficient factual proof of the existence

of reasonable grounds for the granting of the applications, which proof was given orally on oath to the Judges. The contents of the tapes establish conclusively that the conversations were held between Mrs. Sanabria and respondent.

In our opinion, the evidence is insufficient to sustain the first part of charge 1. The evidence does not show that respondent was seeking to become Mrs. Sanabria's attorney. However, the evidence is sufficient to sustain the second part of charge 1. We find that respondent was guilty of obstruction of justice in that he improperly advised a prostitute in the further conduct of her occupation and improperly assisted, prior to the imposition of sentence by Judge KANE, to secure a suspended sentence for her.

In charge 18 it is alleged that on October 18, 1962 respondent, while the attorney for the said Mrs. Sanabria, gave bail for the said defendant in violation of section 554-b of the Code of Criminal Procedure. In our opinion, the evidence is insufficient to sustain this charge and it is dismissed.

With respect to charges 1 and 18 respondent refused to testify on the grounds that (a) his conversations with Mrs. Sanabria represented a privileged communication between attorney and client; and (b) the answers might tend to degrade and incriminate him. In our opinion, neither ground is valid. Respondent expressly disclaimed any attorney-client relationship with Mrs. Sanabria with respect to the prostitution charge. We are further of the opinion that respondent's invocation of the constitutional privilege against self incrimination when asked questions specifically, directly, and narrowly relating to the performance of his official duties as a Justice of the Peace, which judicial office was abolished on December 31, 1963 and was succeeded by the office of District Court Judge on January 1, 1964, is in itself sufficient cause for removal of a Judge. (*Spevack* v. *Klein,* 385 U. S. 511.) Despite his rights as a citizen to refuse to answer possibly incriminating questions, a public officer may be removed from office for refusing to co-operate by producing relevant information and for refusing to answer questions based upon alleged constitutional privilege, in an inquiry as to his fitness to hold his office. " Cause " for removal of a Judge may be found not only in official misconduct, but in his taking attitudes and positions which show unfitness for the office and unworthiness of the trust. Such unfitness and unworthiness is demonstrated by the refusal of a Judge sworn to enforce law to co-operate in any investigation of his acts. (*Matter of Osterman,* 13 N Y 2d (a) (1).)

Charge 9 is that on September 19, 1962 respondent caused his docket to be altered in a summary proceeding before him as a Justice of the Peace.

In a summary proceeding entitled *Lukon* v. *Sedley & Sunrise Ind. Term.*, instituted on February 5, 1962 to recover arrears of rent of $15,000 (which the landlord's attorney testified was actually in excess of $20,000), there were a number of adjournments; the matter was then put over until September 19, 1962. On that day the landlord appeared, but the tenant did not. Respondent directed the entry of a default judgment. After the Clerk of the court entered the default judgment, the attorney for the tenant telephoned to respondent that he had not been advised that the case would be on for trial on September 19, 1962. Without requiring a motion to be served to vacate the default, respondent directed that the entry of the default judgment be eliminated and the case be restored to the trial calendar for October 16, 1962. Respondent's docket book shows that the entire docket page, including the entry of the default judgment, was completely erased with ink eradicator. At the hearing respondent testified that he did not direct anyone to eradicate the page with ink eradicator. However, in an article 78 proceeding instituted by the landlord shortly after the default judgment was opened, respondent submitted an affidavit in which he stated that he directed the Court Clerk to remove the entry of the default judgment; he subsequently learned that the Clerk followed his instructions and eliminated the erroneous entry in the docket pursuant to his instructions; and that he had ordered the erasures. Thus, respondent's testimony at the hearing before this court is inconsistent with his affidavit, sworn to December 18, 1962, shortly after the incident occurred. In our opinion, it was improper for respondent to have vacated the default judgment ex parte, without notice to opposing counsel, and it was wrongful conduct to have knowingly caused the entry of the default judgment to be physically eradicated from the official court docket.

The remaining charges are with respect to respondent's conduct as a District Court Judge.

Charge 2 is with respect to an action entitled *Joy* v. *McClean* for $107 property damage to plaintiff's automobile struck by an automobile operated by an unknown driver, which automobile had emerged from defendant's driveway. The charge is that, when defendant refused to tell respondent the name of the driver of the automobile, he ordered her to be placed in custody and confined in a cell; when she consented to make pay-

ment of $87.50 in settlement of plaintiff's claim, respondent had her released from custody.

In our opinion, the evidence clearly shows that respondent told this unsworn defendant, prior to the trial of this negligence action, that he was placing her in the custody of the Court Attendant and that he was going to arraign her before him, sitting as a Court of Special Sessions, on a charge of obstructing justice because she would not reveal the name of the owner of the automobile which had allegedly caused the damage. Although the trial had not started and defendant had not been placed under oath, respondent also threatened her with contempt for failure to reveal the name of the owner of the automobile and ordered the Court Attendant to take her into custody. She was thereupon placed in a cell by the Court Attendant until she was released by order of the Court Clerk. We find respondent guilty of this charge.

Charge 4 is that on January 21, 1966 respondent held one Frank Dohmen, charged with burglary in the third degree and two counts of assault in the second degree, in bail of $500,000 on each count, which bail was obviously excessive. While fixation of bail in this unusually high amount was error which merits severe criticism, standing alone, we would not deem it cause for removal.

Charge 7 is that on March 22, 1966 one Topol was given a summons for speeding, returnable in Babylon on April 28, 1966; respondent was advised on April 4, 1966 by the Presiding Judge of the District Court not to interfere with the case; nevertheless, on May 12, 1966, when respondent was assigned to hold court in Bay Shore, he entered the courthouse in Babylon, obtained possession of the " back-up " sheet, indorsed thereon that Topol had been arraigned before him on that day (May 12, 1966), had pleaded guilty, and that he had imposed a fine of $10 and suspended sentence. The evidence is amply sufficient to sustain the charge of improper handling of this traffic summons despite the express direction of the Presiding Judge not to assume jurisdiction in a matter not properly before him. We find him guilty of this charge.

Charge 8 is that, although a District Judge had on July 29, 1966 fixed bail for three defendants on disorderly conduct charges, respondent on July 30, 1966 ordered the release of defendants without bail without communicating with the Judge who had fixed bail or with the Judge assigned to preside at the part hearing bail reduction applications or with the District Attorney. Without detailing the evidence in connection with

this charge, suffice it to say that, under the special circumstances here present, we find no evidence of wrongdoing.

Charge 10 is that on November 12, 1964 respondent was intemperate and abusive in his statements to attorney Heil, trial counsel for Patrick Adams, attorney for defendant. Charge 16 is that on March 31, 1965, in connection with another case in which Patrick Adams was attorney of record for defendant, respondent was intemperate and partial. In both cases the attorneys representing defendant moved that respondent disqualify himself; the motions were denied. The evidence is clear that respondent was prejudiced against the attorney of record for defendant in each of these cases and that he showed a pattern of unjudicial conduct on both occasions.

While the Constitution and the statutes enacted thereunder do not prescribe what constitutes " cause " sufficient to justify removal, the cases have defined it as acts " including corruption, general neglect of duty, *delinquency affecting general character and fitness for office,* acts violative of law inspired by interest, oppressive and arbitrary conduct, reckless disregard of litigant's rights, and acts justifying ' the finding that his future retention of office is inconsistent with the fair and proper administration of office ' " (*Matter of Kane* v. *Rudich,* 256 App. Div. 586, 587).

In our opinion, respondent's guilt of the second part of charge 1, and charges 2, 7, 9, 10 and 16, and his invocation on this hearing of his constitutional privilege against self incrimination, show a pattern which comes within the compass of " cause " as thus defined, and makes it imperative that respondent no longer be permitted to pass judgment on the rights of litigants.

Section 132 of the Code of Criminal Procedure provides that, in addition to removal from office, this court may in its discretion prohibit a Judge so removed from holding public office, elective or appointive, thereafter. Although the statute gives this court the power to prohibit respondent from holding any public office in the future, it is our opinion that the greater includes the lesser, and that the power to prohibit him from holding any public office includes within it the power, in the exercise of discretion, to prohibit respondent from holding future judicial office. It is our view that the seriousness of his guilt upon the charges sustained and his taking refuge on this inquiry in the constitutional privilege against self incrimination mandates that he be prohibited from holding judicial office. elective or appointive, hereafter.

Respondent should be removed from his office as a District Court Judge and should be prohibited from holding judicial office, appointive or elective, hereafter.

UGHETTA, Acting P. J., BRENNAN, RABIN, HOPKINS and BENJAMIN, JJ, concur.

In this proceeding to remove respondent, a Judge of the District Court of Suffolk County, from office for cause (N. Y. Const., art VI, § 22, subd. i; UDCA, § 103, subd. [e]; Code Crim. Pro., § 132), respondent is removed from his office and is prohibited from holding judicial office, appointive or elective, hereafter.